2026 IL App (2d) 250471-U
No. 2-25-0471
Order filed July 9, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

*In re* MARRIAGE OF HUSSAIN SALBI, Petitioner-Appellant,

and

TAMARA ALI, Respondent-Appellee.

Appeal from the Circuit Court of McHenry County.
Honorable Robert J. Zalud, Judge, Presiding.
No. 21-DV-499

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Reviewing court had jurisdiction to consider appeal from order dismissing petitioner's section 2-1401 (735 ILCS 5/2-1401 (West 2024)) petitions to vacate judgment of dissolution of marriage; (2) trial court did not err in granting respondent's motion to dismiss petitioner's section 2-1401 petitions to vacate judgment of dissolution of marriage; (3) trial court did not abuse its discretion in denying petitioner leave to file an amended section 2-1401 petition; and (4) reviewing court was without jurisdiction to consider appeal from remaining orders where record demonstrates that other post-dissolution matters remain pending in the trial court, the orders did not contain findings pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), and the orders were not otherwise appealable under the Illinois Supreme Court Rules. Therefore, we affirm in part and dismiss the appeal in part.

¶ 2    On April 3, 2023, the circuit court of McHenry County entered a memorandum decision and judgment dissolving the marriage of petitioner, Hussain Salbi, and respondent, Tamara Ali.

Following entry of the judgment of dissolution, the parties engaged in considerable post-dissolution motion practice. In this *pro se* appeal, petitioner challenges post-dissolution orders dismissing his section 2-1401 petitions to vacate the April 3, 2023, judgment (see 735 ILCS 5/2-1401 (West 2024)), awarding respondent attorney fees pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(b) (West 2024)), and addressing provisions related to the sale of certain marital property. We affirm the dismissal of petitioner's section 2-1401 petitions and dismiss the remainder of petitioner's appeal.

¶ 3                                          I. BACKGROUND

¶ 4     The parties married on July 3, 2004. Two children were born during the marriage. On July 6, 2021, petitioner filed a petition for dissolution of marriage in the circuit court of McHenry County. On August 6, 2021, respondent filed a verified counterpetition for dissolution of marriage in the same court. A multi-day trial commenced on August 18, 2022, before Judge Justin Hansen. The principal witnesses at the hearing were the parties and the guardian *ad litem* (GAL) appointed for the children. The evidence presented at the trial is set forth in detail in this court's prior orders (*In re Marriage of Salbi*, 2023 IL App (2d) 230210-U (*Salbi I)* and *In re Marriage of Salbi*, 2024 IL App (2d) 240322-U (*Salbi II*)) and will be discussed below as necessary to place in context the issues raised on appeal.

¶ 5     On April 3, 2023, Judge Hansen entered a memorandum decision and judgment dissolving the parties' marriage, dividing the marital property, and addressing issues related to the children and support. In his decision, Judge Hansen remarked on the credibility of the parties and the GAL. He stated that the GAL and respondent were "generally credible." He found petitioner's credibility "suffered with [the] Court" based upon petitioner's demeanor while testifying, included repeated attempts to interrupt and providing information beyond that called for by the questions presented.

In support of his credibility finding, Judge Hansen also cited instances in which petitioner lied, petitioner's communications with respondent (which included threats and self-serving accusations), and petitioner's willingness to involve the children in disputes and the litigation.

¶ 6    Relevant to the issues raised in this appeal, Judge Hansen found BSoft Solutions, Inc. (BSoft) (petitioner's business), to be marital property and assigned it to petitioner. Judge Hansen valued BSoft at $191,438.85, which represented the proven assets in BSoft's checking and savings accounts minus its credit card debt. Judge Hansen acknowledged that petitioner presented testimony about a loan BSoft purportedly obtained from the United States Small Business Administration (SBA) but concluded that the evidence regarding the SBA loan was "not sufficient" for him to consider in valuing the business.

¶ 7    Judge Hansen also ordered the sale of marital property located in Barrington (Barrington property). Regarding the sale of the Barrington property, the judgment provides in relevant part:

"The broker shall determine the listing price. The parties shall accept any non-contingent offer to purchase that is within 3 percent of the existing listing price. If they agree, they may accept any other offer of their choosing. *** The parties shall equally divide the proceeds from closing."

¶ 8    Petitioner filed a motion to reconsider, raising various issues. Judge Hansen granted the motion to reconsider with respect to the award of certain personal property, but otherwise denied the motion. Petitioner appealed the judgment and, on petitioner's motion, Judge Hansen stayed the sale of the Barrington property pending appeal. On direct appeal to this court, petitioner raised four distinct issues: (1) whether the trial court erred in valuing BSoft; (2) whether the trial court erred in determining his income for support purposes; (3) whether the trial court erred in dividing the parties' retirement accounts; and (4) whether the trial court erred in allocating the parties'

parental responsibilities. In an order entered on November 7, 2023, this court affirmed the judgment of the trial court. *Salbi I*, 2023 IL App (2d) 230210-U.[1]

¶ 9 Following the issuance of our decision in *Salbi I*, Judge Hansen lifted the stay. Extensive motion practice ensued. During this time, petitioner's attorney withdrew his appearance, and petitioner opted to represent himself. By our count, more than 90 post-judgment pleadings were filed by the parties and other persons connected to the litigation (the GAL and the real estate agent hired to sell the Barrington property). Among these were petitioner's "Motion to Vacate Judgment Pursuant to 735 ILCS 5/2-1401" (filed April 2, 2025), petitioner's "Amended Motion to Vacate Judgment Pursuant to 735 ILCS 5/2-1401" (filed April 14, 2025), respondent's "Verified Petition for Rule to Show Cause Seeking Indirect Civil Contempt for Failure to Pay Support" (filed March 5, 2025), and various motions regarding the sale of the Barrington property.[2]

¶ 10 Pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)), respondent filed a motion to dismiss petitioner's section 2-1401 petitions to vacate the judgment. On May 22, 2025, the trial court, Robert J. Zalud, presiding, granted respondent's

---

[1]*Salbi II*, 2024 IL App (2d) 240322-U, a subsequent appeal, involved a petition to modify allocation of decision-making responsibilities and parenting time and a petition for contempt.

[2]Although petitioner captioned each of his section 2-1401 pleadings as a "motion," the pleading that initiates a request for relief under section 2-1401 is properly styled as a petition. 735 ILCS 5/2-1401(a) (West 2024) (providing that "[r]elief from final orders and judgments, after 30 days from the entry thereof, may be had upon *petition* as provided in this Section." (Emphasis added.)). A "motion" implies a request made of the court in a pending action whereas a section 2-1401 petition "constitutes an independent and separate action from the original action." *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Hence, we refer to each of petitioner's section 2-1401 pleadings as a petition.

motion to dismiss. On June 20, 2025, in response to a motion filed by petitioner, Judge Zalud clarified that the dismissal was without prejudice and also denied petitioner's request for leave to file an amended petition to vacate. Petitioner subsequently filed a motion to reconsider the dismissal, which motion Judge Zalud denied orally on October 2, 2025, and in a written order entered on October 6, 2025.

¶ 11 On August 28, 2025, following a hearing, Judge Zalud entered an order disposing of respondent's verified petition for rule to show cause seeking indirect civil contempt for failure to pay support. Judge Zalud ruled that petitioner had purged the amounts due on or around the time that respondent filed her petition. As such, Judge Zalud declined to find petitioner in contempt. Nonetheless, he ruled that respondent was entitled to attorney fees because petitioner's failure to pay support lacked compelling cause or justification. See 750 ILCS 5/508(b) (West 2024) (providing that when a party seeks to enforce an order or judgment against a noncomplying party and the noncomplying party's failure to comply is without compelling cause or justification, the court shall award attorney fees to the prevailing party). Judge Zalud ordered petitioner to pay respondent's attorney $975 within 45 days. On September 26, 2025, petitioner filed a motion to reconsider and vacate the attorney fee award. On October 9, 2025, petitioner filed an emergency motion to stay enforcement of the attorney fee order pending a hearing on his motion to reconsider. On October 16, 2025, Judge Zalud denied both of petitioner's motions.

¶ 12 The Barrington property was the subject of multiple motions. These included motions to compel its sale, a motion to restrict property showings, a motion to compel compliance with home showings, and motions to vacate and reconsider various rulings. On August 22, 2025, the trial court entered an order on respondent's motion to compel the sale of the Barrington property, which order required the parties to sign a listing agreement with the realtor "at the price determined by the

- 5 -

realtor." The parties signed the listing agreement and the realtor listed the Barrington property for $459,000. After viewing the home, the realtor sent an updated listing agreement to the parties on August 27, 2025, reducing the price to $401,999. On August 28, 2025, the trial court entered an order requiring the parties to sign the updated listing agreement by September 1, 2025. On August 29, 2025, petitioner filed an emergency motion to vacate the August 28, 2025, order, challenging the authority to reduce the listing price.[3] On September 11, 2025, the trial court denied petitioner's motion to vacate the August 28, 2025, order, and again ordered the parties to sign the listing agreement for the Barrington property at the $401,999 list price. In an order dated October 29, 2025 (but file stamped October 30, 2025), the trial court denied petitioner's motion to reconsider the September 11, 2025, ruling.

¶ 13    Petitioner filed a notice of appeal on October 20, 2025 (appealing orders dated May 22, 2025, October 6, 2025, and October 16, 2025)), and an amended notice of appeal on October 31, 2025 (appealing orders dated May 22, 2025, August 28, 2025, September 11, 2025, October 6, 2025, October 16, 2025, and October 29, 2025). As noted earlier, in this *pro se* appeal, petitioner challenges those orders: (1) dismissing his petitions to vacate the April 3, 2023, judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2024)), (2) awarding respondent attorney fees pursuant to section 508(b) of the Act (750 ILCS 5/508(b) (West 2024)), and (3) addressing provisions related to the sale of the Barrington property. We discuss any additional facts relevant to these issues in the analysis section below.

¶ 14                                II. ANALYSIS

¶ 15    At the outset, we note that respondent has not filed an appellee's brief. Pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), we may decide

---

[3]In the emergency motion, petitioner incorrectly refers to the date of the order as August 29, 2025.

the merits of an appeal without an appellee's brief if the record is simple and the issues can be easily decided. While the record here is voluminous and the procedural history lengthy, volume alone does not render the record complex. Because the issues presented in this appeal are neither novel nor complicated, the record is simple enough that we may easily decide the case on its merits without the aid of an appellee's brief.

¶ 16                                    A. Petitions to Vacate

¶ 17     Petitioner first argues that the trial court erred in granting respondent's section 2-615 motion to dismiss his section 2-1401 petitions to vacate the April 3, 2023, judgment of dissolution because the petitions "alleged newly discovered evidence and record-based errors." Relatedly, petitioner claims that the trial court erred in denying his request for leave to file an amended section 2-1401 petition.

¶ 18     As a threshold matter, we note that compliance with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) is mandatory and expected. *Wilmington Savings Fund Society, FSB v. Zarkhin*, 2019 IL App (2d) 180439, ¶ 27. Petitioner's status as a *pro se* litigant does not relieve him of compliance with the rules of appellate practice. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78 ("In Illinois, parties choosing to represent themselves without a lawyer must comply with the same rules and are held to the same standards as licensed attorneys."). Rule 341(h)(7) requires the appellant's brief to include an argument section which "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 19     Here, aside from general citations to sections 2-615 and 2-1401 of the Code (735 ILCS 5/2-615, 2-1401 (West 2024)) and to *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986), for a general proposition of law, this section of petitioner's brief does not cite any legal authority. "Citations to

authority that set forth only general propositions of law and do not address the issues presented do not constitute relevant authority for purposes of Rule 341(h)(7)." *Robinson v. Point One Toyota, Evanston*, 2012 IL App (1st) 111889, ¶ 54. The failure to cite relevant authority violates Rule 341(h)(7) and may result in forfeiture of an issue on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (citing *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23). Petitioner's failure to cite relevant authority is compounded by the fact that his "argument" is woefully underdeveloped, consisting principally of a timeline followed by one or two conclusory sentences alleging trial court error. Arguments not properly developed are also forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Sciarrone v. Village of Island Lake*, 2025 IL App (2d) 240153, ¶ 11; see also *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010) ("Both argument and citation to relevant authority are required. An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of [Rule 341(h)(7)]."). We recognize that forfeiture is harsh. However, as discussed below, forfeiture notwithstanding, to the extent we can decipher petitioner's arguments, they fail for other reasons.

¶ 20                                    1. Jurisdiction

¶ 21     We next consider our jurisdiction to address this issue. See *In re Marriage of Devick*, 335 Ill. App. 3d 734, 740 (2002) (noting that reviewing court has an independent duty to assess its jurisdiction). In his brief, petitioner asserts that we have jurisdiction "under the applicable Illinois Supreme Court Rules governing appeals from final judgments and appealable post-judgment orders." Although he does not specify which particular provisions apply, Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016) governs judgments and orders "granting or denying any of the relief prayed in a petition under section 2-1401 of the Code." Rule 304(b) nevertheless dictates that the time requirements under Illinois Supreme Court Rule 303 (eff. July 1, 2017) must still be

satisfied. Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016). Rule 303(a)(1) provides that a notice of appeal must be filed within 30 days after entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, within 30 days after entry of the order disposing of the last pending post-judgment motion directed against that judgment or order.

¶ 22    In this case, the trial court granted respondent's motion to dismiss petitioner's section 2-1401 petitions on May 22, 2025. Petitioner had 30 days to file a motion to reconsider that dismissal. See 735 ILCS 5/2-1203(a) (West 2024). Because the 30th day after the dismissal fell on a Saturday (June 21, 2025), and weekend days are excluded from the computation when they are the last days in the 30-day period (see 5 ILCS 70/1.11 (West 2024)), petitioner had until Monday, June 23, 2025 to file a motion to reconsider. Petitioner timely filed his motion to reconsider on June 23, 2025, and the trial court entered a written order denying the motion to reconsider on October 6, 2025. A motion to reconsider a ruling on a section 2-1401 petition is considered a posttrial motion for purposes of Rule 303(a)(1). *People v. Schloss*, 2016 IL App (2d) 151072-U, ¶ 16. Accordingly, petitioner had 30 days from October 6, 2025, to file a notice of appeal. Because petitioner filed a timely notice of appeal challenging the orders of May 22, 2025, and October 6, 2025, within that 30-day window, we have jurisdiction to address this issue pursuant to Rules 303(a)(1) and 304(b)(3).

¶ 23                                    2. Merits

¶ 24    Section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2024)) establishes a comprehensive statutory scheme for the vacatur of a final judgment older than 30 days. *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). "The purpose of a section 2-1401 petition is to bring before the trial court facts not appearing in the record which, if known to the trial court at the time judgment was entered, would have prevented [entry of] the judgment." *Physicians Insurance Exchange v. Jennings*, 316 Ill. App.

3d 443, 457 (2000). Generally, a section 2-1401 petition must be filed not later than two years after the entry of the judgment. 735 ILCS 5/2-1401(c) (West 2024). Relief under section 2-1401 is predicated upon proof, by a preponderance of the evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition. *Vincent*, 226 Ill. 2d at 7-8; see also *Smith*, 114 Ill. 2d at 220-21 (noting that a section 2-1401 movant must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting this claim or defense to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition); *In re Detention of Morris*, 362 Ill. App. 3d 321, 323 (2005) ("A meritorious defense is not enough; petitioner must explain why he did not raise that defense during trial"). A section 2-1401 petition must be supported by an affidavit or other showing of matters not contained in the record. 735 ILCS 5/2-1401(b) (West 2024); *City of Eureka v. Knobloch*, 2024 IL App (4th) 230592-U, ¶ 28. When heard on the merits, the question of whether a section 2-1401 petition should be granted or denied lies within the sound discretion of the court, depending upon the facts and equities presented. *Smith*, 114 Ill. 2d at 221.

¶ 25 "Section 2-1401 petitions are essentially complaints inviting responsive pleadings." *Vincent*, 226 Ill. 2d at 8. Thus, like a complaint, a section 2-1401 petition may be challenged by a motion to dismiss if it fails to state a cause of action or shows on its face that the petitioner is not entitled to relief. *Vincent*, 226 Ill. 2d at 8 (noting that a section 2-1401 petition may be dismissed upon a challenge that, even taking as true its allegations, it does not state a meritorious defense or diligence under section 2-1401 case law); see also *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 279-80 (1982); *Morris*, 362 Ill. App. 3d at 323. In this case, respondent moved to dismiss the petitions pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)). Respondent

argued that petitioner failed to state a cause of action for vacatur because he previously raised the same matters at trial, in his motion to reconsider the judgment of dissolution, and on appeal. Respondent further noted that petitioner filed his initial petition on the eve of the two-year anniversary of the judgment of dissolution and filed his amended petition more than two years after entry of the judgment of dissolution. Consequently, respondent asserted that petitioner lacked a reasonable excuse for filing his petitions earlier, other than the failure of his previous efforts at reversing the trial court's decision.

¶ 26    We review *de novo* a motion to dismiss pursuant to section 2-615 of the Code. *Neade v. Portes*, 193 Ill. 2d 433, 439 (2000); *City of Eureka*, 2024 IL App (4th) 230592-U, ¶¶ 33-34. When subject to a motion to dismiss, a section 2-1401 petition to vacate is considered in the same manner as a civil complaint. *Ostendorf*, 89 Ill. 2d at 280; see also *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 57 ("A motion to dismiss a section 2-1401 petition is reviewed under the same standards as any motion to dismiss a pleading."). A section 2-615 motion to dismiss challenges the legal sufficiency of the pleading, examining whether it states a valid cause of action. *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008); *Armstrong v. Snyder*, 336 Ill. App. 3d 567, 568 (2003). When reviewing a section 2-615 dismissal, we must determine whether the allegations, interpreted in the light most favorable to the non-movant, are sufficient to establish a cause of action upon which relief may be granted. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 490 (1996). If, from the well-pleaded facts, a reasonable inference could be drawn in the non-movant's favor, we will draw that inference. *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009). A motion to dismiss a section 2-1401 petition should not be granted unless it clearly appears that no set of facts could ever be proven that would entitle the petitioner to relief. See *Ostendorf*, 89 Ill. 2d at 280. Crucially, a section 2-615 motion is not a proper vehicle for contesting factual

allegations. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 51. We must therefore accept as true all well-pleaded facts in the petition, alongside any reasonable inferences that may arise from them. *In re Estate of Powell*, 2014 IL 115997, ¶ 12.

¶ 27 Petitioner's initial section 2-1401 petition raised four principal allegations. First, petitioner alleged that there was an undisclosed conflict of interest between the GAL and respondent because respondent worked at a bank where the GAL had an account. Second, he claimed that the GAL submitted reports that were "biased and misleading." Third, petitioner cited "incomplete disclosure" in that while Judge Hansen made known that he and the GAL served on the board of a nonprofit organization, "the close nature of their relationship was not fully disclosed." Finally, petitioner alleged "judicial bias" because Judge Hansen questioned petitioner's credibility in the written judgment of dissolution, "relying heavily on the GAL's account despite the presence of conflicting information." In his amended section 2-1401 petition, petitioner raised additional claims. He asserted that although respondent was "repeatedly evasive and uncooperative during trial," Judge Hansen "attributed these same disruptive behaviors to [him]." He also alleged that the GAL's testimony at trial was biased, Judge Hansen "mischaracterized" the status of the SBA loan, and the credibility findings by Judge Hansen in the judgment of dissolution were "contradicted by the trial transcript and record."

¶ 28 On May 22, 2025, Judge Zalud dismissed petitioner's section 2-1401 petitions to vacate due to petitioner's failure to (1) adequately plead the existence of a meritorious claim or defense, (2) allege the exercise of due diligence in bringing any meritorious claim or defense, and (3) allege the exercise of due diligence in filing his section 2-1401 petitions. Judge Zalud explained:

"[A section 2-1401 petition has] to allege the existence of a meritorious claim or

defense, it has to alleged [*sic*] due diligence in presenting that claim or defense and that the

evidence supporting the [petition] could not have been discovered or presented earlier through reasonable diligence. You mention that [in your petitions], but at nowhere [*sic*] is there any facts that support either three of those within the [petitions]. You don't—either there are points that you make in terms of errors that you believe but, there is no specific allegation of an existence of a meritorious claim or defense. It's an and [linking the requirements set forth in the statute]. So even—even if I could construe the existence of a meritorious claim, there is no specific facts that you state in terms of due diligence. I've heard some argument, and I—I'm not convinced that there—there is no allegations [*sic*] that you did any due diligence in presenting this prior to today, that there is evidence supporting the motions [that] could not have been discovered or presented earlier through reasonable diligence. There is—I'm not sure that that evidence exists, but it's not alleged in here that—that you could not have brought this earlier or it could not have been discovered.

And as a result, since those allegations are not within the four corners of the document, I have to grant the motion for 2-615, motion to dismiss, sir, because the pleading is defective."

¶ 29 On June 17, 2025, petitioner filed a motion to clarify the court's decision and for leave to amend his section 2-1401 petition.[4] On June 20, 2025, Judge Zalud entered an order clarifying that the dismissal was without prejudice and denying petitioner's request for leave to file an amended section 2-1401 petition.

¶ 30 On June 23, 2025, petitioner filed a motion to reconsider the dismissal. Two days later, petitioner filed a motion to clarify the scope of the motion to reconsider. The motion to reconsider

---

[4]Petitioner also filed a substantially identical motion the following day, June 18, 2025.

"incorporate[d] all arguments and exhibits" from petitioner's prior petitions, but did not address the deficiencies identified by Judge Zalud in granting respondent's motion to dismiss. On July 3, 2025, Judge Zalud denied the motion to clarify the scope of the motion to reconsider. Following a hearing on October 2, 2025, Judge Zalud denied the motion to reconsider. In his oral ruling, Judge Zalud reiterated that petitioner failed to adequately plead the existence of a meritorious claim or defense. He continued:

"The reason and still the reason why I'm denying your motion to reconsider is you say the words due diligence in presenting the claim or defense. You say the words by citing the statute that the evidence supporting this motion could not have been discovered earlier, presented earlier through reasonable diligence, but there is nothing in the four corners of this document that alleges facts to that extent. There are no facts alleged of due diligence, no facts alleged of when you knew about this. It seems as if you knew about the SBA loan, even if that's a meritorious defense, which I—even if it is, and that's stretching it, you knew about this shortly after April 3, 2023, and there is nothing in this motion of why you waited almost two years to present this motion to vacate pursuant to 2-1401.

All of the things that are alleged also contained about the misattribution of courtroom conduct and factual error were during the trial. Why that wasn't presented before April 4th or 3rd and then in the amended motion, April 14th of 2025, no facts are alleged of due diligence in why this was [not] presented.

The 2-615 motion was—was granted. The motion to reconsider is denied, sir. There are no facts in the document that allege due diligence."

On October 6, 2025, Judge Zalud entered a written order in accordance with his oral ruling and denied petitioner's motion to reconsider the order dismissing his section 2-1401 petitions "for lack of due diligence."

¶ 31    Thus, Judge Zalud dismissed petitioner's section 2-1401 petitions principally on the basis of a lack of due diligence in bringing the alleged claims or defenses and in filing his section 2-1401 petitions. "Due diligence requires the section 2-1401 petitioner to have a reasonable excuse for failing to act within the appropriate time." *Smith*, 114 Ill. 2d at 222. "Since section 2-1401 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence [citations], a party relying on section 2-1401 is not entitled to relief 'unless he shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court.' " *Smith*, 114 Ill. 2d at 222 (quoting *Brockmeyer v. Duncan*, 18 Ill. 2d 502, 505 (1960)). "Specifically, the petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the judgment." *Smith*, 114 Ill. 2d at 222. No bright-line rule exists for judging whether a petitioner has acted diligently. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006). Rather, "[i]n determining the reasonableness of the excuse offered by the petitioner, all of the circumstances attendant upon the entry of the judgment must be considered, including the conduct of the litigants and their attorneys." *Smith*, 114 Ill. 2d at 222.

¶ 32    We have thoroughly reviewed both 2-1401 petitions. As Judge Zalud alluded, while petitioner acknowledges the due diligence standard in his section 2-1401 petitions, nowhere in either filing does he explain why he was unable to previously bring the claims or defenses he raises or how he acted with due diligence in filing the petitions. Indeed, many of the claims are either

attempts to reargue issues previously addressed by the trial court and this court or rely on events that occurred at or prior to trial and certainly could have been presented earlier. Thus, the petitions were properly dismissed for lack of due diligence. See, *e.g.*, *HSBC Bank USA, N.A. as Trustee for First NLC Trust 2005-4 Mortgage Backed Certificates, Series 2005-4 v. Sanchez*, 2020 IL App (1st) 190203-U, ¶¶ 14-15 (holding that the defendants' failure to explain why they waited 19 months after final judgment was entered to file their section 2-1401 petition was fatal); *People v. Addison*, 2016 IL App (5th) 150346-U, ¶ 14 (affirming dismissal where the defendant's amended section 2-1401 petition contained no factual allegations regarding his due diligence in bringing his claim to the trial court and no factual allegations regarding the defendant's due diligence in filing the amended petition); *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148 (1996) (holding that a proceeding under section 2-1401 is not intended to give the party a new opportunity to do that which should have been done in an earlier proceeding or to relieve the party of the consequences of his or her mistake or negligence). Even now on appeal, petitioner makes no effort to explain how he exercised due diligence in bringing any meritorious claim or defense or in filing his section 2-1401 petitions.

¶ 33    Instead, petitioner raises three distinct allegations of trial court error. But petitioner has forfeited consideration of these arguments by failing to either cite any relevant authority in support thereof or properly develop his positions. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Vancura*, 238 Ill. 2d at 369-70; *Sciarrone*, 2025 IL App (2d) 240153, ¶ 11; *Robinson*, 2012 IL App (1st) 111889, ¶ 54; *Petrik*, 2012 IL App (2d) 110495, ¶ 38. Forfeiture notwithstanding, these arguments lack merit for other reasons.

¶ 34    First, petitioner asserts that after the trial court dismissed his petitions he "sought to cure or clarify under § 2-615(d) [of the Code (735 ILCS 5/2-615(d) (West 2024))] by requesting leave

to amend/clarify" but the court denied the request. Petitioner then argues "[t]his created the core procedural error: the court dismissed for a curable pleading deficiency and then denied the statutory mechanism designed to correct it." The right to amend a pleading is not absolute but rather is a matter within the trial court's discretion. *Hiatt v. Illinois Tool Works*, 2018 IL App (2d) 170554, ¶ 36.

¶ 35 We initially point out that a transcript of the June 20, 2025, hearing, which resulted in the written order denying petitioner's request for leave to file an amended petition to vacate is not included in the record on appeal. Petitioner, as the appellant bears the burden of providing this court with a sufficiently complete record for our review of the alleged errors. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). This duty applies to *pro se* litigants. See *Holzrichter*, 2013 IL App (1st) 110287, ¶ 78. As our supreme court has stated, "[a]n issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." (Internal quotation marks omitted.) *In re Marriage of Gulla*, 234 Ill. 2d 414, 422 (2009). Hence, if a complete record is unavailable, the reviewing court must presume "that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392. Any doubts arising "from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392.

¶ 36 Without a transcript of the hearing on petitioner's request for leave to file an amended petition to vacate, we simply do not know why the trial court denied the request. Thus, we must presume that the trial court did not abuse its discretion in denying petitioner's request for leave to amend the petition to vacate. See *Foutch*, 99 Ill. 2d at 392 ("As there is no transcript of the hearing on the motion to vacate here, there is no basis for holding that the trial court abused discretion [*sic*] in denying the motion"); *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481,

¶ 56 (noting that in the absence of a report of proceedings of the trial court's hearing, the court "cannot divine the trial court's reasoning in denying defendant's motion" or "determine whether that decision constituted an abuse of discretion").

¶ 37    We further observe that among the factors a court considers in determining whether to grant leave to amend is whether the proposed amendment would cure the defective pleading. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992); *Hiatt*, 2018 IL App (2d) 170554, ¶ 37. Here, petitioner never tendered a proposed amendment after the trial court dismissed his initial section 2-1401 petitions. A party's failure to tender an amended petition diminishes the reviewing court's ability to determine whether a proposed amendment would have provided a viable cause of action and constitutes forfeiture of the right to have an appellate court review the denial of a request for leave to amend. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 521 (1987); *Mendelson v. Ben A. Borenstein & Co.*, 240 Ill. App. 3d 605, 619 (1992). We recognize that at the hearing on his motion to reconsider the dismissal, petitioner addressed the status of the SBA loan. He alleged that evidence regarding loan repayment only became available after the entry of the April 3, 2023, judgment of dissolution. As the trial court observed, however, even accepting this as true, petitioner does not explain why he waited almost two years after entry of the judgment to present this argument. Given this record, the trial court did not abuse its discretion in denying petitioner's request for leave to amend.

¶ 38    Second, petitioner complains that the trial court did not reject his petitions "on the merits" but rather on "pleading-based diligence/discoverability grounds." Petitioner does not explain why this was improper. As noted above, a section 2-1401 movant must affirmatively set forth specific factual allegation supporting each of three elements: (1) the existence of a meritorious claim or defense; (2) due diligence in presenting this claim or defense to the circuit court in the original

action; and (3) due diligence in filing the section 2-1401 petition. *Vincent*, 226 Ill. 2d at 7-8; *Smith*, 114 Ill. 2d at 220-21; *Morris*, 362 Ill. App. 3d at 323. Thus, the failure to allege due diligence is a proper basis to dismiss the pleading. See, *e.g.*, *Vincent*, 226 Ill. 2d at 8 (noting that a section 2-1401 petition may be dismissed upon a challenge that, even taking as true its allegations, it does not state a meritorious defense *or* diligence under section 2-1401 case law); *HSBC Bank USA, N.A. as Trustee for First NLC Trust 2005-4 Mortgage Backed Certificates, Series 2005-4*, 2020 IL App (1st) 190203-U, ¶¶ 14-15 (holding that the defendants' failure to explain why they waited 19 months after final judgment was entered to file their section 2-1401 petition was fatal); *Addison*, 2016 IL App (5th) 150346-U, ¶ 14 (affirming dismissal where the defendant's amended section 2-1401 petition contained no factual allegations regarding his due diligence in bringing his claim to the trial court and no factual allegations regarding the defendant's due diligence in filing the amended petition); see also *Onewest Bank, FSB v. Wos*, 2015 IL App (2d) 140498-U, ¶ 12 (affirming denial of leave to amend section 2-1401 petition because proposed amendment failed to properly allege that the plaintiff was diligent in presenting his claim to the trial court).

¶ 39 Third, defendant suggests that he did present a "diligence timeline," but the court refused to consider it because it was not pleaded. As noted, Judge Zalud denied petitioner's motion to reconsider the dismissal of the section 2-1401 petitions to vacate on the ground that there were no facts in the petitions alleging due diligence. The following exchange then occurred between the parties and the court:

> "[Petitioner]: I understand. But what is there is no fact?
>
> THE COURT: The four corners of the document have to allege facts other than putting the words due diligence.
>
> [Petitioner]: I know, but what's the fact? My question is, what's the facts?

THE COURT: I don't know. And, again, if I don't know and it's not contained in there, you didn't plead it.

[Petitioner]: No. I did contain it.

THE COURT: You did not, sir.

[Petitioner]: It's the attachment, Your Honor.

THE COURT: I looked at all of it, sir. The attachment does not go to due diligence in presenting it in a reasonable fashion, sir.

[Petitioner]: It has the—it has the payment started after the—and it has the receipt for the payment [of the SBA loan].

THE COURT: Yes, April 16th, 2023.

[Petitioner]: Yeah.

THE COURT: Which is almost two years before you brought the motion to vacate under 2-1401, and you don't allege why it took you almost two years to allege this.

[Petitioner]: I have an explanation for it.

THE COURT: Well, that's not in the motion, sir. That's why the 2-615 is granted. We are not left to guess. Those are standards that need to be pled, which is why the four corners of the document are not sufficient.

[Petitioner]: So did I meet my—

THE COURT: The motion—the motion to reconsider is denied, sir.

[Petitioner]: Yes, Your Honor, but did I meet my four corners or no?

[Respondent's attorney]: No. That's why it's denied.

THE COURT: No, I'm denying it, sir, because there are not facts pled. You've pled facts. The due diligence is not pled in a factual basis.

[Petitioner]: The due diligence?

THE COURT: You've made an argument for meritorious defense, which, again, I'm not even sure you did, but let's say you did, due diligence in presenting that claim or defense and the evidence supporting the motion could not have been discovered or presented earlier through reasonable diligence. That's where you don't allege facts regarding those two other factors under 2-1401.

[Petitioner]: If—if I was given one more minute, after my attorney was removed or after I removed my attorney, I discovered at that time that I was—I was qualified.

THE COURT: Sir—

[Petitioner]: Your Honor—

THE COURT: —it's the four corners of the motion. You are making arguments and I can't consider those. I denied it because the four corners of the document don't—

[Petitioner]: Your Honor—

THE COURT: —don't plead facts sufficient for a 2-1401 petition.

[Petitioner]: Your Honor, the only thing that—

THE COURT: I can come back and we can hear more of the motions November 13th, 1:30, number two setting?

[Petitioner] I'm sorry?

THE COURT: November 13th, 1:30, number two setting.

[Petitioner] Yes, Your Honor. I just want to let you know that I'm filing an appeal.

THE COURT: That would be fine, sir."

¶ 40 Petitioner claims that his "timing explanation" is supported by the common-law record. He notes that his attorney was granted leave to withdraw on February 18, 2025, he filed a *pro se*

appearance three days later, and filed his initial section 2-1401 petition on April 2, 2025. Again, however, petitioner does not explain how this timeline evidences that he acted with due diligence in presenting any claim or defense or in filing his section 2-1401 petitions. Petitioner further claims this constituted a "curable pleading ground" but the trial court refused to allow him to amend his petition. But we reject this claim for the reasons set forth above—petitioner did not attach a transcript of the hearing on his request for leave to file an amended petition to vacate so we do not know why the trial court denied the request. In addition, petitioner failed to tender a proposed amendment after the trial court dismissed his initial section 2-1401 petitions. For all these reasons, we affirm the dismissal of petitioner's section 2-1401 petitions and the trial court's denial of plaintiff's request for leave to file an amended section 2-1401 petition.

¶ 41                                B. Attorney Fees

¶ 42    Next, petitioner argues that the trial court abused its discretion by awarding attorney fees under section 508(b) of the Act (750 ILCS 5/508(b) (West 2024)) when it disposed of respondent's verified petition for rule to show cause seeking indirect civil contempt for failure to pay support.

¶ 43    Again, we find it necessary to assess our jurisdiction to address this issue. *Devick*, 335 Ill. App. 3d at 740. Petitioner asserts that we have jurisdiction "under the applicable Illinois Supreme Court Rules governing appeals from final judgments and appealable post-judgment orders." As with the prior issue, petitioner does not specify which particular provisions of the Illinois Supreme Court Rules apply.

¶ 44    Subject to statutory or supreme court rule exceptions, our jurisdiction is limited to reviewing appeals from final judgments. *In re Marriage of Yerdung*, 126 Ill. 2d 542, 553 (1989); Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) ("Every final judgment of a circuit court in a civil case is appealable as of right."); see also Ill. S. Ct. R. 303 (eff. July 1, 2017) (setting forth the procedure

for perfecting a final judgment of the circuit court in a civil case). One exception is found in Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). That rule allows an appeal from "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Mar. 5, 2016). A finding of contempt and the imposition of a penalty are prerequisites under Rule 304(b)(5). See *In re Marriage of Gutman*, 232 Ill. 2d 145, 152 (2008) ("[O]nly a contempt *judgment that imposes a sanction* is a final, appealable order" (emphasis in original.)); *In re Marriage of Sachdev*, 2026 IL App (1st) 241431-U, ¶ 11 (holding that the imposition of a penalty is a prerequisite under Rule 304(b)(5)); *In re Marriage of Carrillo*, 372 Ill. App. 3d 803, 813 (2007) (noting that a party cannot appeal the denial of a contempt petition prior to entry of a final judgment on all claims without a Rule 304(a) finding); *Lewis v. Family Planning Management, Inc.*, 306 Ill. App. 3d 918, 923-24 (1999) (declining to find jurisdiction under Rule 304(b)(5) in the absence of a contempt finding). Although Judge Zalud ordered petitioner to pay respondent's attorney fees (see *Pardilla v. Village of Hoffman Estates*, 2023 IL App (1st) 211580, ¶ 28 (noting that an award of attorney fees imposed in response to a finding of contempt constitutes a penalty for purposes of Rule 304(b)(5))), he expressly declined to find petitioner in contempt. Thus, we do not have jurisdiction to consider this issue under Rule 304(b)(5).

¶ 45    We next turn to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Rule 304(a) provides that parties may only appeal from final judgments that dispose of every "claim" in a case, unless the trial court makes an express finding that there is no just reason to delay enforcement or appeal of the judgment. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016); *John G. Phillips & Assoc. v. Brown*, 197 Ill. 2d 337, 339 (2001); *Sachdev*, 2026 IL App (1st) 241431-U, ¶ 15. A "claim" is " 'any right, liability, or matter raised in an action.' " *John G. Phillips & Assoc.*, 197 Ill. 2d at 339 (quoting *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 465 (1990)). A motion for contempt

constitutes a "claim" under Rule 304 (*Gutman*, 232 Ill. 2d at 152; *Royal Oak Condominium Ass'n, Inc. v. Stevenson*, 2025 IL App (1st) 242317, ¶ 65) as does a petition for attorney fees (*Taylor v. Highline Auto Sales, Inc.*, 2023 IL App (1st) 221590, ¶ 34).

¶ 46 For purposes of appellate jurisdiction, unrelated post-dissolution matters constitute separate claims, so that a final order disposing of one of several claims may not be appealed without a Rule 304(a) finding (*In re Marriage of Crecos*, 2021 IL 126192, ¶ 45) or unless an enumerated exception applies, *e.g.*, Rule 304(b) (enumerating judgments and orders appealable without a Rule 304(a) finding)) (*Sachdev*, 2026 IL App (1st) 241431-U, ¶ 19). Stated differently, absent one of the enumerated exceptions, if a final judgment is entered on a claim while other claims are pending, that final judgment is not appealable unless the court makes the required Rule 304(a) finding that there is no just reason to delay enforcement of or appeal from the judgment. *Sachdev*, 2026 IL App (1st) 241431-U, ¶ 20. In *Crecos*, the supreme court explained the rationale for such a policy:

> " 'Where a party files one postdissolution petition, several more are likely to follow. Allowing or requiring parties to appeal after each postdissolution claim is resolved would put great strain on the appellate court's docket and impose an unnecessary burden on those who would prefer not to appeal until the trial court resolves all pending claims. To be sure, justice may on occasion require that a final order disposing of a claim be immediately appealed, rather than held at bay until another pending postdissolution claim is resolved. Yet, Rule 304(a) accommodates those circumstances: the trial court need only enter a Rule 304(a) finding.' " *Crecos*, 2021 IL 126192, ¶ 44 (quoting *In re Marriage of Teymour*, 2017 IL App (1st) 161091, ¶ 39).

¶ 47 In this case, the orders pertaining to the award of attorney fees do not contain a Rule 304(a) finding. Thus, the attorney fee award, as a claim, was appealable only if the trial court had ruled on all other pending post-dissolution claims. The problem here is that, based on the record before us, we are unable to determine whether this is the case. Indeed, petitioner suggests that several matters remain pending in the trial court. In this regard, we observe that on November 21, 2025, petitioner filed a "Supplemental Petition to Modify Child Support and Maintenance." In that filing, petitioner asserts that he filed a motion to modify support and maintenance on March 3, 2025, which the trial court denied in an order dated June 20, 2025. Petitioner further asserts that he filed a motion to reconsider that order on July 20, 2025, which motion "has not been heard and is set for hearing in 2026." Petitioner further asserts that he filed a "Motion to Stay" on July 25, 2025, "which remains unheard." In addition, our review suggests that other matters are pending, including the November 21, 2025, supplemental petition referenced above, respondent's second petition for rule to show cause seeking indirect civil contempt for failure to pay support (filed June 5, 2025), and petitioner's motion for temporary relief (filed January 2, 2026). Other matters may be pending as well. Because several claims remained pending when petitioner filed his notices of appeal, his appeal is premature. We therefore lack jurisdiction to review the order awarding respondent attorney fees.

¶ 48 Petitioner has two options. He can obtain a Rule 304(a) finding with respect to the fee award. See *In re Marriage of Valkiunas*, 389 Ill. App. 3d 965, 968-69 (2008); see also *In re Marriage of Berto*, 344 Ill. App. 3d 705, 710 (2003) (accepting jurisdiction of order dismissing petition for attorney fees). Alternatively, he can obtain an order or orders resolving any post-dissolution motions or other claims pending in this matter. See *Valkiunas*, 389 Ill. App. 3d 965, 968-69 (2008). We presume that petitioner can timely file a notice of appeal once the trial court

certifies its ruling on the attorney fee issue pursuant to Rule 304(a) or it resolves any pending post-dissolution motions or separate claims in his matter. However, if all such matters have been resolved and the time to file a new notice appeal has expired, Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017) allows petitioner to establish the effectiveness of the present notice of appeal by filing a petition for rehearing and supplementing the record, thereby establishing our jurisdiction to address the merits. See *In re Marriage of Schwieger*, 379 Ill. App. 3d 687, 689-90 (2008); *In re Marriage of Knoerr*, 377 Ill. App. 3d 1042, 1050 (2007).

¶ 49                                    C. Barrington Property

¶ 50    Petitioner also challenges orders entered by the trial court with respect to the sale of the Barrington property. Specifically, petitioner contended that the trial court's orders improperly modified the judgment of dissolution's "property-sale safeguards" by "expand[ing] listing-price control beyond what the April 3, 2023 [judgment of dissolution] authorized," "undermining the built-in 3% acceptance safeguard," and "effectively rewriting the sale terms without jurisdiction." Appeal of this issue is premature because, as noted with respect to the attorney fee issue, several claims remained pending when petitioner filed his notices of appeal, and there is no indication in the record that they have been resolved. Further, the orders dealing with this issue do not contain Rule 304(a) language and petitioner does not direct us to any other supreme court rule that would confer appellate jurisdiction. We therefore lack jurisdiction to review the orders pertaining to the Barrington property.

¶ 51                                    III. CONCLUSION

¶ 52    For the reasons set forth above, we affirm the trial court's dismissal of petitioner's section 2-1401 petitions to vacate the judgment of dissolution and its decision to deny petitioner leave to

file an amended section 2-1401 petition. We dismiss the remainder of petitioner's appeal because it is not final and appealable.

¶ 53    Affirmed in part and dismissed in part.